IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DARREL E. NELSON, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 06-404 |
| | ) | |
| v. | ) | Judge Gustave Diamond |
| | ) | Magistrate Judge Caiazza |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.   RECOMMENDATION**

It is respectfully recommended that the instant Petition for Writ of Habeas Corpus filed by Darrel E. Nelson be denied.

**II.   REPORT**

This is a federal habeas petition filed pursuant to the provisions of 28 U.S.C. §2241 by Darrel Nelson ("Nelson" or "the Petitioner"). Nelson is a federal prisoner serving a sentence of forty-one months incarceration imposed in 1993 after he pled guilty to tax evasion. (Doc. 7, ¶¶ 4-5). Nelson is only now serving his federal sentence because he first served a sentence of twelve and one-half to thirty years incarceration imposed by the Court of Common Pleas of Allegheny County, Pennsylvania, on June 24, 1994. (Doc. 7, ¶¶ 5, 7). Nelson's complaints relate to the manner in which his sentences have been served; he claims that constitutional error has occurred because he initially began

serving his federal sentence but was subsequently transferred improperly to state custody. This sequence of events, Nelson argues, entitles him to credit against his federal sentence for time spent in state custody.

This court does not agree.

In order to understand Nelson's claim, a close review of the procedural history is warranted. Nelson was arrested on federal charges on April 16, 1993, but was released on bond. (Doc. 10, at 2). He pled guilty to tax evasion charges on August 16, 1993, but remained free on bond pending sentencing. (Id.). Nelson was later arrested on September 18, 1993, by Pennsylvania authorities on drug charges and was held without bond. (Id.). Nelson was "borrowed" from the state authorities on December 29, 1993 for his federal sentencing proceeding, and was immediately returned to state custody. (Id.). He was later sentenced for his state drug offenses on June 24, 1994. The state court expressly made its sentence consecutive to the previously imposed federal sentence. (Doc. 7, ¶ 7). Nelson was then released to federal custody on July 1, 1994, and was designated to the Federal Correctional Institution at McKean ("FCI-McKean") on July 26, 1994, to begin serving his federal sentence. (Doc. 7, ¶ 9; Doc. 10, at 3). After he was transported to FCI McKean, a Bureau of Prisons records custodian determined that Nelson was in primary custody of the Commonwealth of Pennsylvania, and should serve his

Pennsylvania sentence before serving his federal sentence. Nelson was returned to state custody on October 14, 1994. (Doc. 10, at 3-4). He thereafter served his state minimum sentence, and was recently paroled to a federal detainer. He is currently serving his forty-one month federal sentence at the Federal Correctional Institution at Cumberland.

Although his petition is convoluted, it is clear that Nelson is making a claim premised upon the "continuous service rule" whereby a federal sentence, once begun, may not be interrupted for reasons outside the control of the prisoner. Nelson asserts that he began serving his federal sentence in 1994 when he was designated to FCI McKean, and that the subsequent action by the Bureau of Prisons in sending him back to Pennsylvania authorities has caused him to serve his federal sentence in installments. Nelson argues that his federal sentence began to run in June, 1994, and has long since expired.

A. **Subject matter jurisdiction**.

Initially the Court notes that, although a challenge to a federal sentence *as imposed* must be made under 28 U.S.C. § 2255, a claim concerning the execution of a federal sentence by federal prison and parole authorities is properly brought under 28 U.S.C. § 2241. Bennett v. Soto, 850 F.2d 161 (3d Cir.1988); Gomori v. Arnold, 533 F.2d 871 (3d Cir.), cert. denied, 429 U.S. 851

(1976). Nelsons claim is clearly a challenge to the computation of his sentence and is appropriately brought under §2241.

B.  **The Exhaustion Requirement**

A federal prisoner seeking habeas relief under 28 U.S.C. § 2241 first must exhaust administrative remedies before bringing his or her claim to federal court. <u>United States v. Wilson</u>, 503 U.S. 329, 334-35, 112 S.Ct. 1351, 117 L.Ed.2d 593 (1992); <u>Moscato v. Federal Bureau of Prisons</u>, 98 F.3d 757 (3d Cir.1996); <u>United States v. Keller</u>, 58 F.3d 884 (2d Cir.1995); <u>United States v. Brann</u>, 990 F.2d 98, 104 (3d Cir.1993). The Bureau of Prisons is the agency charged with administering the federal prison system. <u>Reno v. Koray</u>, 515 U.S. 50, 57, 115 S.Ct. 2021, 132 L.Ed.2d 46 (1995); <u>Wilson</u>, 503 U.S. at 334-335. For federal prisoners challenging Bureau of Prisons determinations, the initial venue is the administrative process. The Bureau of Prisons codified its Administrative Remedy Program ("ARP") in 28 C.F.R. Part 542, which provides detailed procedures and guidelines for federal prisoners to seek administrative review of any aspect of their confinement. Nelson asserts that he has pursued an appeal of the challenged action through all levels of the ARP procedure and Respondent does not contest this assertion. Hence, available administrative remedies appear to have been exhausted in this case.

C.  **Analysis**

In a habeas proceeding where computation of a federal sentence is at issue, a court must consider two separate issues. First, the court must establish the date on which the federal sentence commences; and second, the court must determine the extent to which the petitioner may be entitled to credit for time spent in custody prior to commencement of the sentence. <u>Chambers v. Holland</u>, 920 F.Supp.618, 621 (E.D.Pa.), <u>aff'd</u>, 100 F.3d 946 (3d Cir. 1996). This is a material inquiry because the applicable statute applies different standards to time served after a federal sentence commences, and time served prior to that time. <u>See</u> 18 U.S.C. §3585.

The first inquiry is governed by 18 U.S.C. § 3585(a):

> **(a) Commencement of sentence.**--A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.

Here, the federal sentence "commenced" when Nelson, who had been in state custody, was recently paroled to a federal detainer. Nelson, in effect, attempts to establish that his sentence commenced when he was designated to FCI McKean in 1994  - but his argument is based on a faulty reading of the record and applicable law.

The crux of Nelson's argument is that his federal sentence

5

"commenced" in 1994 and was improperly interrupted by his transfer to state custody. That said, he is asserting his right to uninterrupted service of his federal sentence. Although he does not cite to Weekes v. Fleming, 301 F.3d 1175 (10th Cir. 2002), cert. denied, 537 U.S. 1136 (2003), Weekes supports his position.

When two different sovereigns have custody of a criminal defendant over time, the general rule is that the sovereign who acquires custody first in time has primary jurisdiction over the defendant. See Chambers v. Holland, 920 F.Supp. 618, 622 (M.D.Pa.), aff'd, 100 F.3d 946 (3d Cir.1996) and cases cited therein.

> Primary jurisdiction remains vested in the [jurisdiction] which first arrested the defendant until that jurisdiction relinquishes its priority by, e.g., bail release, dismissal of the state charges, parole release, or expiration of the sentence.

Chambers, 920 F.Supp. at 622 (citations omitted). Here, federal authorities first arrested Nelson, but he was then released on bond. Pennsylvania authorities thereafter arrested Nelson, and exercised primary jurisdiction over him by denying bond and keeping him in their custody. Nelson was then "borrowed" from state custody for his federal sentence hearing. He was then returned to Pennsylvania authorities immediately thereafter.

Nelson agrees that Pennsylvania had primary custody from September, 1993, when he was arrested on state charges, until the

6

time he was sentenced in state court on June 24, 1994. He argues, however, that Pennsylvania surrendered primary custody on July 1, 1994, when he was released to a federal detainer and then actually began to serve his federal sentence.

Petitioner's argument is similar to that made in Weekes; he alleges that he has been forced to serve his federal sentence "in installments" because he was transferred between Pennsylvania and federal custody in 1994. In Weekes, the defendant was arrested on state drug charges on April 20, 1994. Weekes was then taken into federal custody on May 16, 1994, and the pending state charges were dismissed. Weekes was transferred back to state custody on May 25, 1994, to appear for a probation violation proceeding. His state probation was revoked, and he was sentenced from two to five years imprisonment by the state authorities. Weekes was then returned to federal custody where he was sentenced to 188 months incarceration on the federal charges. Weekes, 301 F.3d at 1177-78.

After his federal sentence was imposed, Weekes was designated to begin serving that sentence on February 21, 1995, and he was received at the Federal Correctional Institution at Lompoc ("FCI-Lompoc") on March 24, 1995. Upon his arrival there, Bureau of Prisons ("BOP") staff determined that Weekes' federal sentence was intended to be served consecutively to his state sentence. Thus, Weekes was transferred from his designated

7

federal institution to state custody on April 20, 1995. Weekes served his state sentence and was released by the state and returned to federal custody on April 18, 1999.  In calculating Weekes' federal sentence, the BOP did not provide Weekes credit for any of the time spent in state custody. Id.

The Court of Appeals for the Tenth Circuit determined that Weekes' federal sentence "commenced" upon, and continued to run from, his designation for assignment to FCI Lompoc on February 21, 1995. The court premised this ruling on its finding that the federal authorities had primary custody over Weekes at the time the federal sentence was imposed. Id. at 1181.  The Court then addressed the question of whether "the United States may interrupt the service of a federal sentence without giving the federal prisoner credit on that federal sentence." Id. at 1180.

In Weekes, the court stated that "unless interrupted by fault of the prisoner . . . a prison sentence runs continuously from the date on which the defendant surrenders to begin serving it."  Id. In the end, the Court found that because Weekes had been under the primary custody of the federal government when he began serving his federal sentence, the federal government made a mistake in returning him to state authorities. Id. (citing Dunne v. Keohane, 14 F.3d 335, 336 (7 Cir.1994)). Thus, although both of the sentencing judges intended for Weekes to serve his sentences consecutively, the Tenth Circuit relied upon the

"continuous service" rule to credit Weekes with federal time served for his stay in state prison. Id. at 1181-82.

The Weekes analysis is dependent upon two findings: (1) federal authorities had primary custody of the prisoner; and (2) while this was the case, the prisoner began to serve his federal sentence before being returned to state custody. Here, it does not appear that Nelson was in primary federal custody after his state sentence was imposed. Pennsylvania clearly had primary custody over Nelson from September, 1993, through June, 1994. Also, it appears that Nelson was mistakenly surrendered to federal authorities after his state sentence was imposed. Nonetheless, Nelson was then designated to FCI McKean and began to serve his federal sentence; his service of that sentence was interrupted and he was transferred to state custody. Thus, this case is similar to Weekes - although not entirely.

In any event, other courts have not enforced the continuous service rule as strictly as the Weekes court. In Free v. Miles, 333 F.3d 550 (5 Cir.2003), the Fifth Circuit addressed a similar situation as presented in Weekes. In Free, the defendant was transferred to federal authorities while he was serving a state sentence by way of a writ of habeas corpus *ad prosequendum* to be sentenced on federal charges. Following sentencing, Free was immediately sent to a federal facility, where he remained for six months. At that time, federal officials realized that they had

made a mistake and that Free should have been returned to the Texas Department of Corrections to complete his state sentence before commencing his federal sentence. Free then filed a habeas corpus petition asserting that because his federal sentence had "commenced" on the date he had originally (but erroneously) been delivered to the federal facility, his federal sentence should be credited with all time served subsequent to that date - including the two years he served in state prison. Free relied upon the same argument proffered in Weekes; *i.e,* a prisoner is entitled to time served when he is incarcerated discontinuously through no fault of his own.

    The Fifth Circuit, rather than treating the continuous service doctrine as a bright line rule, adopted a flexible approach based upon the purpose of the rule, which is "to prevent the government from abusing its coercive power to imprison a person by artificially extending the duration of his sentence through releases and re-incarcerations." Free, 333 F.3d 554.  The Court focused upon the stated intent of the sentencing judges to impose consecutive sentences and held that the continuous service rule was inapplicable because "[i]t [was] apparent from the record that Free's *total* time of incarceration in both federal [and] state prisons has *not* been-and will not be-increased by even a single day as a result of his mistakenly serving the first six months of his federal sentence prior to completing the

service of his state sentence." Id. at 555. The Court found it "of no moment" that Free served his sentence "in two shifts between sovereigns rather than one" because he ended up serving "the correct total time of his *consecutive* state and federal sentences." Id. This approach prevents the continuous service rule from providing prisoners with a "get out of jail early" card. Id.

In fact, the Tenth Circuit has recently had an opportunity to revisit Weekes, and has determined that, where a federal court obtains a state prisoner "on loan" pursuant to a writ of habeas corpus *ad prosequendum*, the Weekes decision is inapplicable. U.S. v. Binford, 436 F.3d 1252, 1256 (10th Cir. 2006). Free is cited with approval in Binford. The ruling in Weekes has, accordingly, been limited to its facts in the Tenth Circuit, and has been rejected by the Fifth Circuit.

As evidenced by the record, including Nelson's own pleadings, his period of incarceration has not been extended in any way due to an erroneous transfer to state custody. Nelson is presently serving multiple, consecutive sentences - precisely as ordered by the sentencing courts. The "continuous service rule" has no application here.

11

### III. **CONCLUSION**

For all of the reasons stated above, the Petition for Writ of Habeas Corpus filed by Darrel E. Nelson should be dismissed.[1]

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4 (B) of the Local Rules for Magistrates, objections to this report and recommendation are due by January 2, 2007. Responses to objections are due by January 12, 2007.

                                    s/ Francis X. Caiazza
                                    Francis X. Caiazza
                                    United States Magistrate Judge

December 14, 2006

cc:   Darrel E. Nelson
      CN-8670
      Reg. No. 04794-068
      Federal Correctional Institution
      P.O. Box 1000
      Cumberland, MD 21501-1000

      Christy C. Weigand, Esquire
      Assistant United States Attorney
      401 U.S. Post Office & Courthouse
      Pittsburgh, PA 15219

---

[1] Federal prisoner appeals from the denial of a § 2241 habeas corpus proceeding are not governed by the certificate of appealability requirement. United States v. Cepero, 224 F.3d 256, 264-65 (3d Cir. 2000); 28 U.S.C. § 2253(c)(1)(B). Hence, no recommendation is made in this respect.